## DRAINAGE DISTRICT No. 7 *v.* TERRY.

### Opinion delivered January 1, 1917.

1. DRAINAGE DISTRICTS—FORMATION—NOTICE.—In the organization of a drainage district the publication of a notice that three persons, naming them, had petitioned to be constituted a drainage district, held insufficient under the drainage laws of the State.

2. DRAINAGE DISTRICTS—FORMATION—NOTICE.—The notice of a petition for the formation of a drainage district must clearly and specifically declare that purpose, so that one reading it may ascertain from it just what is intended, without any extraneous matter or other source o information.

3. DRAINAGE DISTRICTS—FORMATION—AMENDATORY ACTS—NOTICE.— All persons are charged with knowledge of the amendatory acts to the general drainage laws of the State, but land owners are not required to take notice of proceedings to organize a drainage district, until a notice, such as is required by the statute, is properly published.

4. DRAINAGE DISTRICTS—FORMATION—REVIEW ON CERTIORARI.—The validity of the orders of the county court, constituting a drainage district, may be questioned in a collateral attack on *certiorari* to review those orders.

5. APPEAL AND ERROR—JURISDICTION—COLLATERAL ATTACK.—Where jurisdiction is to be exercised in a special matter, inquiry may be made even in a collateral attack, as to whether or not jurisdictional requirements have been complied with.

Appeal from Mississippi Circuit Court, Osceola District; *W. J. Driver*, Judge; affirmed.

*J. T. Coston*, for appellants.

1. The notice was sufficient under the Act. It contained everything required by law. Acts 1911, p. 199; 122 Ark. 418.

2. No notice was required. Kirby's Digest, §§ 1434, 1439, 1437; Acts 1909, p. 839, § 10; Acts 1911, p. 109.

3. Argues other points not decided by the court.

4. The question cannot be raised by certiorari— only by appeal. Acts 1911, p. 199; 129 S. W. 818; 114 *Id*. 919; 49 Ark. 533.

*Coleman, Lewis & Cunningham* and *P. A. Lasley*, for appellee.

1. The notice was insufficient and the court never acquired jurisdiction. Acts 1911, p. 109; Acts 1909, p. 839; Kirby's Digest, § 1414, *et seq*.

2. Certiorari was appellees' only remedy. The time, twenty days, within which to appeal, had expired and there was no other remedy. Acts 1909, § 34; Acts 1911, 835, etc.; 64 Ark. 108.

SMITH, J. A number of propositions are discussed in the very excellent briefs in this case, but we find a single question decisive of all of them, and will therefore consider this question only.

Drainage District No. 7 was organized under the general drainage law of 1903, contained in sections 1414-1450 of Kirby's Digest. Later, three persons who are owners of real property in this district caused the following notice to be published:

## "DRAINAGE NOTICE.

"Notice is hereby given that S. E. Simonson, R. C. Rose and W. O. Anthony, three owners of real property within Drainage District No. 7, have petitioned the county court to constitute them a Drainage District under the terms of the drainage laws passed by the Legislature in the year 1911.

"Notice is further given that said petition will be heard on the first Monday in November, 1915.

"W. M. TAYLOR, County Judge.
"J. H. LONG, County Clerk."

The county court made an order constituting Drainage District No. 7 a drainage district under the provisions of the Drainage Act of 1909. Act No. 279, p. 829, Acts of 1909.

The circuit court held, upon a review of this proceeding upon *certiorari*, among other things, that this notice did not meet the requirements of the law, and that therefore the county court did not acquire jurisdiction to make the requested change. This section reads as follows:

"Sec. 34. This Act shall not repeal the drainage laws now in force, but it is an alternative system; and the drainage districts may be organized under this Act, or under the statutes which are in force at the time of the passage hereof. Any district which has heretofore been organized, or which may be hereafter organized under the existing statutes, may become a drainage district under the terms of this Act, as follows: If three owners of real property within any such district shall petition the county court to constitute them a drainage district under the terms hereof, the county court shall give notice of the application by two weeks' publication in some newspaper published and having a *bona fide* circulation in the county, and of a time when said petition will be heard. All owners of real property within the district shall have the right to appear and contest the said petition or to support the same. The county court shall hear the evidence and shall either

grant the petition or deny the same, as it deems most advantageous to the property owners of the district; and if it grants the petition the said district shall have all the rights and powers 'and be subject to all the obligations provided by the terms of this Act; *provided,* however, that if a majority of the land owners of the district, or the owners of a majority of the acreage therein, petition for the adoption of this Act, the county court must make an order declaring that such district shall henceforth be governed by the terms of this Act; and such duty may be enforced by mandamus."

(1-2)   We think the court below correctly held the notice to be insufficient. Such notice should be so definite and certain that one reading it might ascertain from it just what was intended without reference to any extraneous matter or other source of information. The notice should definitely apprise the land owner who reads it, and who has no other information on the subject, that it is proposed to constitute a drainage district which had been organized under the act found in Kirby's Digest, a district under the Act of 1909, *supra.* A land owner in this district might not know who Simonson, Rose and Anthony were, and the statement that they were property owners within Drainage District No. 7, and had petitioned the court "to constitute them a drainage district under the terms of the drainage laws passed by the Legislature in the year 1911" falls far short of stating that the petitioners will request the court to change the operation and control of a drainage district organized under the provisions of the statute found in Kirby's Digest to the alternative system provided for in the Act of 1909, *supra.* This change is authorized by section 34 of the drainage act of 1909, which provides that the Act of which it is a part shall not repeal the prior law, although both Acts take up the entire subject of drainage and each provides a complete drainage system, but section 34 of this last Act provides that the last Act is an alternative and not a substituted system.

This section 34 is re-enacted without change as Act 54 of the Public Acts of 1911, p. 32, except that the amended Act provides that this section 34 shall not apply to Poinsett county. In effect, therefore, Act No. 54 of the Public Acts of 1911 is a special Act which exempts Poinsett county from the provisions of a section of a general act.

Other drainage legislation of 1911 of a general nature included Acts 49, 136 and 221.

Act No. 49 purports to amend section 7 of Act No. 3 of the Acts of 1907, but in fact amends section 7 of Act No. 111 of the Acts of 1907, and deals with the collection of overdue assessments and provides for the notice to be given in the proceedings to collect them.

Act No. 136 amends section 12 of Act No. 279 of the Acts of 1909, and provides for the levy of additional assessments of taxes against the betterments.

Act No. 221 amends sections 1, 2, 3, 4 and 34 of the Drainage Act of 1909. The amendment to section 34 is to the effect that if a majority of the land owners of the district, or the owners of a majority of the acreage therein, petition for the adoption of the Act of 1909, the county court must make an order declaring that such district shall thereafter be governed by the terms of this act, and shall appoint commissioners of his own selection who shall carry the act into effect, with a proviso that the act should not apply to certain drainage districts in Poinsett county nor to Crittenden or Phillips counties.

(3)    All persons must be and are charged with knowledge of these amendatory acts and of their effect upon the statutes which they purport to amend, but nothing in any of these acts requires the land owner to take notice of a proceeding similar to the one now under review until a notice conforming to the law has been published and jurisdiction thereby conferred upon the court. It is urged that the notice employs substantially a portion of the language of the act authorizing this proceeding and is therefore sufficient. But it employs a portion only of such language, and it is only by in-

tendment that one reading the notice might conclude that three property owners within a drainage district which had been established under one act were petitioning the county court to transfer the operation and control of that district from the provisions of the act under which it was created to the provisions of another act.

The notice should clearly and specifically declare this .purpose, and having failed to do so we conclude that the court below was correct in holding the proceedings had thereunder to be void.

(4-5)  It is insisted that the question here considered could properly be raised only by appeal, and that the validity of the orders of the county court cannot be questioned in a collateral attack on *certiorari* to review these orders.  But the contrary was held in the case of *St. L., I. M. & S. R. Co.* v. *Dudgeon*, 64 Ark. 108, in which case it was said that where jurisdiction is to be exercised in a special matter, inquiry may be made even in a collateral attack as to whether or not those jurisdictional requirements have been complied with.  It appears here that the jurisdictional requirement was not met, and we therefore affirm the action of the circuit court in quashing the proceedings in the county court.